**IN RE: Israel Hustun LAWSON, Debtor.**

**Israel Hustun Lawson, Plaintiff,**

**v.**

**Melissa Lawson, Defendant.**

**Case No. 13–73476–WLH**
**Adv. Proc. No. 14–5262**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed September 10, 2015

877

Brian S. Limbocker, Limbocker Law Firm, LLC, Woodstock, GA, for Plaintiff.

Melissa Lawson, Duluth, GA, pro se.

## ORDER AFTER TRIAL

Wendy L. Hagenau, U.S. Bankruptcy Court Judge

This case requires the Court to determine the parties' intent when, in a consent agreement, the Debtor agreed to make mortgage payments on the former marital home. The Court concludes, after trial, the obligation of the Debtor was not one in the nature of support and is not a domestic support obligation. The Debtor's obligation is therefore dischargeable under 11 U.S.C. § 523(a)(5).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core matter under 28 U.S.C. § 157(b)(2)(I).

## FACTUAL FINDINGS

The facts in this matter are largely undisputed. Plaintiff Israel Lawson ("Debtor") and Defendant Melissa Lawson ("Ms. Lawson") were married on September 5, 1998 and had two children. Both parties held a Bachelor of Arts degree in management information systems from the same college and worked for the same company

at the time of the divorce at issue. In January 2009, the parties separated and ultimately divorced on June 22, 2009.

During the marriage, in 2001, the parties bought property located at 3857 Foxwood Road, Duluth, Georgia ("Property"). Because of the Debtor's credit rating, the first deed to secure debt on the Property was and is in the name of Ms. Lawson only. Later, the parties took out a second priority deed to secure debt which is in both parties' names. When the parties separated, Ms. Lawson moved out of the Property while the Debtor and the two children remained in the Property. After several months, when Ms. Lawson obtained a residence, the children divided their time between the Debtor and Ms. Lawson. The Debtor continued to live in the Property, but at the time of the trial, the Property was unoccupied. Ms. Lawson did not reside in the Property after her departure in January 2009.

On April 8, 2009, the parties signed a Settlement Agreement of Non–Child Issues ("Settlement Agreement"). The parties also signed a Child Support Addendum dated April 27, 2009 ("Addendum"). Both the Settlement Agreement and the Addendum were incorporated into the divorce decree of June 22, 2009. According to the Addendum, the gross income of the Debtor was $8,920.06 per month, while the gross income of Ms. Lawson was $6,567.90 per month. The Debtor was ordered to make child support payments of $184.71 to Ms. Lawson. The parties generally split all the expenses related to their children evenly. Custody was also divided evenly between the parties.

The Settlement Agreement contains a number of relevant provisions. First, it provides "Neither party shall pay permanent or temporary alimony to the other and each party forever waives any right which he or she may have to seek the award of alimony." Second, the Settlement Agreement divides vehicles, furnishings and personal property, and various bank accounts.

The Settlement Agreement also addresses the division of debts and obligations. In general, each of the parties was to pay their own debts or obligations, but Ms. Lawson was ordered to pay $10,000 to the Debtor for her share of a debt on a specific credit card. The disposition of the Property is addressed under the title "Marital Home". The Settlement Agreement states,

> Husband shall retain exclusive use, title, equity and possession of the home and shall be solely responsible for all expenses associated with the home, including mortgages, utilities, maintenance, repairs, taxes and insurance. Husband shall have the exclusive right to deduct the mortgage interest on the marital residence on state and federal tax returns.

> Contemporaneously with the execution of this agreement, Wife shall execute a quit claim deed to Husband relinquishing Wife's interest in the home.

> Husband shall cause the mortgage to be removed from Wife's name, refinancing if necessary, within six months of the date on which the divorce decree is entered by the court.

> (b) If Husband is [sic] fails to cause wife's name to be removed from the mortgage as indicated herein, the parties will immediately place the home on the market for sale with a Realtor from a nationally recognized realty company

> . . .

The Settlement Agreement requires cooperation between the parties in selecting a realtor and effectuating a sale. The Settlement Agreement provides that the process of listing the Property, choosing a

broker, and selecting an offering price "shall commence each 90 days until the Property sells." Nowhere in the Settlement Agreement are the identities of the security deed holders disclosed.

The Debtor made the mortgage payments until 2013. The Debtor tried to refinance the Property at least five times and marketed the Property for sale at least twice, for about six months each. Due to the declining real estate values in the area, however, the Debtor never received an offer sufficient to pay both the first and second deeds to secure debt and was unable to refinance the Property.

The Debtor filed a petition under Chapter 13 of the Bankruptcy Code on October 29, 2013. His plan was confirmed and provides for the surrender of the Property. The Debtor then filed this adversary proceeding for a declaration that any obligation he had under the Settlement Agreement to pay the mortgage was dischargeable. A trial of this matter was held on July 21, 2015, at which the Debtor appeared represented by Brian Limbocker, and Ms. Lawson appeared *pro se*.

## LEGAL ANALYSIS

■ Under 11 U.S.C. § 1328(a), the completion by the Debtor of all payments under a Chapter 13 plan, along with the filing of certain certifications, results in a discharge to the Debtor of all debts provided for by the plan except any debt "of the kind specified in ... paragraph 5 ... of section 523(a)". 11 U.S.C. § 523(a)(5) provides that debts for domestic support obligations are not dischargeable. A domestic support obligation is further defined in 11 U.S.C. § 101(14A) as a debt that is

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's

parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

■ Whether an obligation is in the nature of alimony, maintenance or support is an issue of federal law.

Although federal law controls, state law does "provide guidance in determining whether the obligation should be considered 'support under § 523(a)(5).' ... To make this determination, a bankruptcy court should undertake 'a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support.' In conducting this inquiry, a court cannot rely on the label used by

the parties.... A debt is in the *nature* of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001) (cites omitted). The courts have examined numerous factors to ascertain the intent of the parties:

1. the language of the divorce agreement;

2. the relative financial positions of the parties at the time of the agreement;

3. the amount of property division;

4. whether the obligation terminates on the death or remarriage of the beneficiary;

5. the number and frequency of payments;

6. whether the agreement includes a waiver of support rights;

7. whether the obligation can be modified or enforced in state court; and

8. whether the obligation is treated as support for tax purposes.

*In re McCollum*, 415 B.R. 625, 631 (Bankr. M.D.Ga2009). *See also In re Benson*, 441 Fed.Appx. 650, 651 (11th Cir.2011); *In re Silver*, No. 13–05081, 2013 WL 4498813 (Bankr.N.D.Ga. July 22, 2013).

 Numerous courts, both state and federal, have examined the issue of whether an obligation to make mortgage payments for an ex-spouse are in the nature of support, but because the facts vary so do the outcomes. Under Georgia law, "alimony" is defined as "an allowance out of one party's estate, made for the support of the other party when living separately ...". O.C.G.A. § 19–6–1. " 'Periodic alimony' is characterized by an indefinite number of payments, making the actual amount to be paid also indefinite." *White v. Howard*, 295 Ga. 210, 211, 758 S.E.2d 824 (2014). An award of permanent periodic alimony typically terminates "upon the death of either spouse or the remarriage of the recipient spouse unless otherwise expressly provided." *Id.* A court in the course of a divorce may also divide the parties' marital property either by equitable division or by property settlement. The Georgia Supreme Court has stated that " 'property settlement' or 'property division' generally refers to the allocation of the marital estate between the divorcing spouses". *Id.* at fn. 1. Each refers to the determination of "who owns property when its title is disputed and to the partitioning of jointly owned property." *Daniel v. Daniel*, 277 Ga. 871, 596 S.E.2d 608 (2004) (cites omitted). "[E]quitable property division" represents the 'allocation of assets acquired during the marriage to the parties, based on the respective equitable interests in those assets'." *Id.* at 872, 596 S.E.2d 608 (cites omitted). However, the Georgia courts caution that a property settlement or equitable division of property may be used to provide the former spouse with *maintenance or support*. *Id.* at 873, 596 S.E.2d 608. *See also Cummings*, 244 F.3d at 1266 (construing Florida law). So under both federal law and state law, whether a particular allocation was made for the maintenance or support of an ex-spouse or children varies from case to case, based on the facts of the case and the intent of the parties.

 Applying the relevant factors to this case leads the Court to conclude the obligation of the Debtor to pay the mortgages on the Property was not intended for the support of Ms. Lawson or his children. First, the language of the Settlement Agreement does not specify what the obligation to pay the mortgages is intended to be. It is clearly not intended to be alimony since the parties specifically waived their respective rights to alimony. Moreover, the Settlement Agreement does not require the Debtor to pay Ms. Lawson

any amount in lieu of paying the mortgages or to provide any funds to Ms. Lawson for her own place to live. Instead, the Settlement Agreement only requires the sale or refinancing of the Property which is more in the nature of dividing the property and debts of the parties rather than providing for support. Further, the requirement to sell the Property if it cannot be refinanced is inconsistent with Ms. Lawson's argument that the mortgage obligation was for the support of the children. The Court also notes that by the date of the divorce, the children were dividing their time between the parties.

Next, the financial positions of the parties were relatively close. Both parties worked at the same company; both parties had the same degree; and the parties' incomes were about $2,500/month apart. The difference in income was partially covered by the child support. Next, the Settlement Agreement attempts to divide everything between the parties evenly. Each party was responsible for its own debts and retained its own property. Ms. Lawson was required to pay the Debtor $10,000 for an amount on a credit card but otherwise all other debts and property were allocated evenly between the parties.

The Settlement Agreement contains no provision for the termination of the obligation to pay the mortgages on the Property or sell or refinance the Property. Because the obligation does not terminate on death or remarriage, this factor suggests the obligation is more in the nature of property division.

The next several factors contribute nothing to the analysis. The number and frequency of payments is largely irrelevant in this context. Further, no evidence was produced by the parties as to whether the obligation of the Debtor to sell or refinance the Property could be modified. Finally, as to the tax treatment of the obligation, the only reference in the Settlement Agreement is that the Debtor may take the interest deduction for payments made on the mortgage.

In addition to the factors identified by other bankruptcy courts, the Court finds that several other factors are telling in this case. First, Ms. Lawson did not live in the Property at the time of the divorce and has not lived there since early 2009. Moreover, the Settlement Agreement called for her to quitclaim her interest in the Property to the Debtor. The Debtor testified he wanted to live in the house so his children could continue to have the same home when they stayed with him. Because Ms. Lawson was not planning to use the house for her own support, it appears the provision for the sale and refinancing of the Property and the Debtor's payment of the mortgage until that time was in the nature of a division of property and debts. This case is factually similar to *In re Bedingfield*, 42 B.R. 641 (S.D.Ga. 1983) where the court noted that all the parties understood the ex-spouse and children would be moving to another location and the home was only to be rented. *Id.* at 648. The court concluded the obligation to pay the mortgage was not in the nature of support. *Id.*

The Court notes the fact that the first-priority deed to secure debt was only in the name of Ms. Lawson could be a relevant factor. The Debtor's obligation to pay that debt, on which he had no obligation, could be construed as an obligation for support. When asked by the Court why there was no alimony, Ms. Lawson testified that since the Debtor was paying the mortgage, it was not "fair" to ask for alimony. While these facts could point to a finding of support, considering all of the facts which the Court has found, these are not sufficient to establish that the obligation to pay the mortgages was in the

nature of support for Ms. Lawson or the children.

### CONCLUSION

Considering all of the facts, the Court concludes the Debtor's obligation to sell and refinance the Property and to pay the mortgages in the meantime was not in the nature of support for Ms. Lawson or the children. The Property was not maintained for Ms. Lawson as she left the home in January 2009 and never lived there again. Moreover, she quitclaimed the Property to the Debtor. In fact, the Debtor's undertaking an obligation to pay the mortgage appears more to be for his own support as providing a place for him to live than it is providing for Ms. Lawson's support. While the recession caused dramatic losses in real estate value which therefore made it impossible for the Debtor to sell or refinance the Property such as to pay off all of the debt, that fact does not change the original intent of the parties, which was to simply divide their property and to divide the debt. The Court therefore concludes the obligation under the Settlement Agreement to pay the mortgages is dischargeable.

**IT IS ORDERED.**